1  MORGAN, LEWIS & BOCKIUS LLP
   Colin C. West, State Bar No. 184095
2  colin.west@morganlewis.com
   One Market, Spear Street Tower
3  San Francisco, CA  94105-1596
   Tel:   +1.415.442.1000
4  Fax:  +1.415.442.1001

5  MORGAN, LEWIS & BOCKIUS LLP
   Kassia Stephenson, State Bar No. 336175
6  kassia.stephenson@morganlewis.com
   1400 Page Mill Road
7  Palo Alto, CA  94304
   Tel:   +1.650.843.4000
8  Fax:  +1.650.843.4001

9  MORGAN, LEWIS & BOCKIUS LLP
   Hailey A. Phelan, Bar No. 353990
10 hailey.phelan@morganlewis.com
   600 Anton Boulevard, Suite 1800
11 Costa Mesa, CA  92626-7653
   Tel:   +1.714.830.0600
12 Fax:  +1.714.830.0700

13 Attorneys for Plaintiff
   SkyHop Global LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SKYHOP GLOBAL LLC,<br><br>              Plaintiff,<br><br>   vs.<br><br>THE CITY OF LOS ANGELES DEPARTMENT OF PUBLIC WORKS BUREAU OF CONTRACT ADMINISTRATION, and DOES 1-10,<br><br>              Defendants. | Case No. 2:25-cv-940<br><br>**COMPLAINT FOR CIVIL RIGHTS VIOLATION – FIRST AMENDMENT RETALIATION – 42 U.S.C. § 1983**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff SkyHop Global LLC ("Plaintiff" or "SkyHop") by and through its undersigned counsel, brings this case under 42 U.S.C. Section 1983 against the City of Los Angeles, for violations of SkyHop's rights under the First Amendment to the United States Constitution.

## INTRODUCTION

1. This case seeks to prevent Defendant City of Los Angeles (the "City") from continuing to violate the First Amendment rights of SkyHop. The City has unconstitutionally threatened to terminate SkyHop's Non-Exclusive Licensing Agreement ("NELA") with the City of Los Angeles, which Agreement is necessary for SkyHop to operate its business at Los Angeles International Airport. The City is doing this in retaliation for SkyHop's exercise of its First Amendment rights to (1) free speech and (2) petition the government for redress. Specifically, because SkyHop (1) wrote letters to the City refuting the City's assertion that SkyHop was subject to the Living Wage Ordinance, Los Angeles Administrative Code ("LAAC"), Division 10, Chapter 1, Article 11, section 10.37, et seq. (the "LWO"), and (2) filed a lawsuit challenging the City's attempt to enforce the LWO against SkyHop.

2. The City's threat to terminate SkyHop's NELA, and/or its carrying out that threat, would cause SkyHop significant, irreparable injury, including injury to SkyHop's goodwill and significant loss of revenue. Moreover, the injury resulting from denial of SkyHop's ability to exercise its constitutional rights, would, as a matter of law, be significant, and irreparable.

3. SkyHop seeks declaratory and injunctive relief to remedy the City's unlawful conduct, and damages for the financial injury the City's conduct has and will cause.

## VENUE AND JURISDICTION

4. The Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the First Amendment of the United States Constitution and 42 U.S.C.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1    Case No. 2:25-cv-940
VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND VERIFIED PETITION FOR WRIT OF MANDATE PURSUANT TO CCP § 1085

§ 1983.

5. The Court may grant declaratory and injunctive relief for constitutional violations pursuant to 28 U.S.C. § 2201 and Federal Rules of Civil Procedure 57 and 65.

6. SkyHop is, moreover, entitled to damages for the City's violation of Section 1983.

7. Venue is proper in the Central District of California because the events that give rise to this action occurred within this district.

## PARTIES

8. SkyHop is a Limited Liability Company organized and existing under the laws of the State of Florida and headquartered in Fort Lauderdale, Florida, with its Los Angeles operations based in Hawthorne, California.

9. Defendant City of Los Angeles is a municipal corporation and a charter city, organized and existing under the laws of the State of California, with the capacity to sue and be sued. As used herein, the term "City" includes, but is not limited to, City employees, agents, officers, boards, commissions, departments (including, without limitation, the Department of Public Works, Bureau of Contract Administration, Office of Contract Compliance and the Department of Airports d/b/a Los Angeles World Airports or "LAWA"), and their members, all equally charged with complying with duties under the City charter, and with the laws of the State of California.

I.   **FACTUAL ALLEGATIONS**

A.   **Overview of SkyHop's Operations**

10. SkyHop Global LLC ("SkyHop") is a technology-enabled, ground transportation business headquartered in Fort Lauderdale, Florida. SkyHop provides ground transportation services for airline crews to and from airports at thirty-four locations across the United States, through contracts it has with a number of different airlines. Its Los Angeles operations serve airline crews arriving

into and departing from LAX, Burbank, Long Beach Airport, Ontario, and John Wayne Airports.

11. SkyHop, owned by Kristine Scotto, is the only woman-owned ground transportation business that exclusively services airline crews, not the general public or other private entities. It has a senior staff composed of 100% women and a diverse national employee base representing more than 20 different nationalities.

12. SkyHop operates a competitive and challenging environment. In the company's ten-year existence, the airline industry, and the ground transportation industry that serves it, have been affected by an unprecedented pandemic, international conflicts, fuel price uncertainty, vehicle supply chain issues, the complete upheaval of the ground transportation industry generally, and severe challenges to the airline industry.

13. Despite these challenges, SkyHop has grown from a small regional service to a national company completing thousands of trips annually. It employs more than 1,100 people. SkyHop uses proprietary software, which has revolutionized the airline crew ground transportation business, and provides SkyHop's airline partners with transparency and visibility to each and every trip. SkyHop's demonstrated commitments to safety and efficiency are second to none.

14. Airlines, their personnel, the traveling public who rely on them, and the cities and businesses who enjoy the benefits of increased travel and tourism, all depend upon SkyHop to transport flight crews safely, timely, and efficiently.

**B.   Before SkyHop Signed the NELA, the City Tells SkyHop That the LWO Does Not Apply to That Agreement**

15. The Companies that operate at LAX must sign a NELA with the City, in which the City and the company agree to the terms upon which the company will have access to the airport. Before SkyHop executed the NELA, the City, through the language of the NELA, told SkyHop, and agreed with SkyHop, that the City's LWO did not apply to SkyHop's NELA.

16. NELAs address things such as fees the company must pay to the City, the insurance the company must carry, and limitations on the company's use of the airport. *See* Ex. A, Art. 1, §§ 1, 4.

17. NELAs also identify specific laws that the company must abide by while operating at LAX. The NELA for SkyHop specifically references several City of Los Angeles ordinances, including provisions providing that "Ordinance and Code Language Governs" and that "[t]he obligation to comply with any Ordinances and Codes which have been incorporated into this License by reference, shall extend to any amendments which may be made to those Ordinances and Codes during the term of this License." *See id.*, §§ 18.14, 18.15.

18. NELAs are also required to specify whether the LWO applies to the companies that will operate under them. SkyHop entered into the NELA with the City more than twenty years after the LWO's passage, and nearly three years after the rules and procedures implementing the LWO became effective. According to the Rules and Procedures Interpreting the LWO—which had been in place years before SkyHop signed the NELA—the Bureau of Contract Administration ("BCA") (the agency of the City charged with enforcing the LWO), "is responsible for making an initial determination of whether an Agreement is subject to the LWO." *See* Exhibit B, City of Los Angeles, Rules and Procedures Implementing the Living Wage Ordinance (effective March 20, 2018). These rules further provide that "[t]he Awarding Authority shall incorporate the standard LWO contract language . . . into the Agreement, RFP, or RFB **unless the Agreement, RFP, or RFB is not covered by the LWO**." *Id.* (emphasis added).

19. The "standard LWO contract language" is not in the NELA. In fact, the NELA does not mention the LWO.

20. Accordingly, SkyHop signed the NELA, agreed to its five-year term, and began expending substantial resources toward preparing to service, and servicing, the clients who operate out of LAX, with a well-founded understanding

1  that the LWO did not apply to the NELA.

2  21.  And, based on that understanding, after entering into the NELA, SkyHop entered into binding service agreements with airlines it serves at LAX, which were negotiated in reliance on SkyHop's anticipated annual operating costs (the "Airline Service Agreements"), and which agreements do not expire for years.

C.  **In Response to the City's Threats, SkyHop Exercises its First Amendment Rights**

1.  **SkyHop Objects to the City's Letters Claiming the LWO Applies to Its NELA.**

9.  In February, 2023, more than two years after SkyHop signed its NELA that lacked the "standard LWO contract language," the City, through the BCA, began claiming that the LWO did, in fact, apply to SkyHop's NELA.

10.  Specifically, the BCA's Ms. Sophy Tzeng wrote to SkyHop regarding "potential violations of the LWO by Skyhop Global involving Employees assigned to work at the Los Angeles International Airport (LAX)," and requesting documents from SkyHop based on that supposed violation.

11.  SkyHop responded to that letter by exercising its rights under the First Amendment, namely, to argue to the City that the LWO did not apply to its NELA. *See* February 27, 2023 Letter from SkyHop to Ms. Tzeng.

12.  Over the next several weeks, the City repeatedly asserted that the LWO applied to SkyHop's NELA, and SkyHop repeatedly explained why it did not.

13.  One of SkyHop's chief arguments in those letters was that, while the Rules governing the LWO require that the NELAs of companies to which the LWO applies contain "standard LWO contract language"—SkyHop's contained no such language—which indicates that the Agreement "is not covered by the LWO."

14.  Accordingly, SkyHop requested (1) that the City confirm in writing, that the LWO did not apply to its NELA, or, (2) at least, that the City conduct a hearing to determine whether the LWO applied to the Agreement. *See id.*

15. The City declined SkyHop's requests for a written finding or a hearing (*see* April 5, 2023 Letter from Ms. Tzeng to SkyHop) and appeared to drop the issue.

16. SkyHop heard nothing from the City for months, and SkyHop continued to perform under the NELA.

17. Six months later, in October, 2023, the City, specifically Beatrice Hsu, Interim Chief Executive Officer of LAWA (the Los Angeles World Airports, the governing body for LAX and the Van Nuys airport) contacted SkyHop about the LWO again. The City, again began repeatedly claiming in writing that SkyHop's NELA was subject to the LWO, and requesting documents from the company based on the City's claimed authority under the LWO.

18. In response, SkyHop continued to exercise its First Amendment rights, by reiterating its position that, under the law, the LWO did not apply to its NELA.

19. On November 3, 2023, the City wrote, "[i]n accordance with" one of the LWO's provisions, "one of the remedies is to recommend to the Los Angeles World Airport to terminate the Skyhop's NELA."

20. On December 7, 2023, the City served a "Notice to Correct" on SkyHop, informing SkyHop that it both had violated the LWO and remained "in violation of the LWO," and that SkyHop "must now take measures to correct the violation."

21. None of the City's communications explained why the City raised the LWO with SkyHop two years after the company and the City had agreed to and executed the NELA.

### A. SkyHop Sues Over the City's Attempts to Enforce the LWO Against SkyHop.

22. On January 18, 2024, SkyHop exercised its First Amendment rights to petition for the redress of grievances, by filing a lawsuit in Los Angeles Superior Court, seeking "a declaration that the LWO does not apply to SkyHop."

23. The City responded to the lawsuit with a demurrer, which attempted to

rewrite history. Specifically, the City argued that the question of whether the LWO applied to SkyHop was not "ripe" because the City had yet to "make a final determination that the LWO applies to SkyHop" (Demurrer, at 4:4-6), and that, after consideration of the issue, the City "might even [ultimately] agree with SkyHop that the LWO does not apply." See Ex. C, Demurrer Reply Br. at 1.

24. Those statements were false. As noted previously, the City had concluded, and repeatedly asserted to SkyHop, that it had decided that the LWO applied to it. For example, the City's "Notice to Correct" to SkyHop informed the company that it remained "in violation of the LWO," and that SkyHop "must now take measures to correct the violation."

25. The Court denied the City's demurrer for the most part, noting the many times the City had asserted that the LWO applied to SkyHop, and attempted to enforce that ordinance against the company.

26. Following the Court's rejection of the City's attempt to rewrite history, the City attempted to do so, again.

27. On October 22, 2024, the City wrote SkyHop that, "Effective today, the OCC has withdrawn the [Notice to Correct] and is closing its LWO investigation. The OCC will not issue any future [Notice to Correct] based on alleged non-compliance with the LWO while SkyHop continues operating under its current Non-Exclusive Licensing Agreement with the Los Angeles World Airports dated March 15, 2021."

28. The NELA had a five-year term, meaning it would not expire until March 21, 2026. Thus, SkyHop reasonably believed that, if the City attempted to contend that the LWO applied to its next NELA, it would have more than a year (until March 15, 2026) to adjust operations and contracts accordingly.

29. On January 30, 2025, the City notified SkyHop that it was going to terminate SkyHop's NELA effective February 28, 2025, and that SkyHop would be presented with a new NELA on a "take-it-or-leave it" basis, through which SkyHop

would be forced to say that the LWO applies to it.

30. The City's attempt to terminate the NELA is in direct retaliation for the exercise of SkyHop's First Amendment rights. Specifically, the City is punishing SkyHop for (1) making its position regarding the LWO known to the City in its letters to it regarding that subject and (2) exercising its right to have a court decide the merits of a key legal question, as opposed to letting the City dictate what the law is.

31. Several facts demonstrate this. The first is the proximity in time between SkyHop's actions, namely its exercise of its First Amendment Rights, and the City's purporting to terminate the NELA.

32. The second is the fact that the proffered reasons for the termination are pretextual. SkyHop's NELA does not expire under its terms until 2026, but the City contends that it is terminating SkyHop's NELA, and replacing it with one that states that the LWO applies, because (1) the NELA is a "Public Lease or License" within the language of the LWO, and (2) SkyHop is a "Subcontractor" under the LWO's language.

33. However, the nature of SkyHop's operations has remained the same since it executed the NELA, as has the LWO's language. Thus, if the NELA is a "Public Lease or License" within the language of the LWO and/or SkyHop is a "Subcontractor," that would have been the case in 2021 when SkyHop executed the NELA, and, per the City's published policy, SkyHop's NELA would have contained language indicating that the LWO applied. However, the NELA contains no such language.

34. The City contends that it is not singling SkyHop outbut is instead terminating the NELAs of all Airline Crew transportation providers that serve LAX, and presenting all of these entities with NELAs that state that the LWO applies to them.

35. However, the "Airline Crew transportation providers," to whom,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

8
COMPLAINT

Case No. 2:25-cv-940

according to the City, new NELAs are being presented, are not, in fact, companies that specialize in providing transportation to airline crews.

36. Moreover, only one of the entities on the City's list of "Airline Crew transportation providers" whose NELAs are purportedly being canceled and replaced appear on the City's published list of LAX NELA Holders, which list is purportedly current as of January, 2025: https://www.lawa.org/-/media/lawa-web/lawa-airport-operations/files/airfield-permits/nela/active-lax-nela-roster.ashx.

37. The damage to SkyHop from the City's threats to terminate the NELA has been extensive, as will the damage that will result from the City's termination of SkyHop's NELA.

38. As a matter of law, infringement of First Amendment rights is irreparable injury.

39. Moreover, termination of SkyHop's NELA will injure SkyHop's goodwill, in that it will adversely affect SkyHop's reputation for providing service to its customers—airlines—in every region nationwide that SkyHop services. This injury to SkyHop's goodwill will have a negative ripple effect on SkyHop's operations nationwide.

40. The termination of SkyHop's NELA will also injure SkyHop financially, since its inability to service airlines operating out of LAX will obviously make it unable to obtain the financial benefits of its contracts.

## FIRST CAUSE OF ACTION

**(Retaliation in Violation of the First Amendment Freedom Speech under 42 U.S.C. § 1983)**

41. SkyHop re-alleges each and every allegation contained in the preceding paragraphs and incorporates them herein as if set forth in full.

42. SkyHop engaged in constitutionally protected activity and speech, including making its position regarding the LWO known to the City in its letters to the City, and exercising its right to petition by filing a lawsuit and asserting its

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

9
COMPLAINT

Case No. 2:25-cv-940

rights against the City.

43. In retaliation for SkyHop's exercise of its First Amendment rights, the City has threatened to, and, unless enjoined by this Court will, terminate SkyHop's NELA.

44. Defendant purportedly acted under color of law when seeking to terminate SkyHop's NELA in retaliation for SkyHop's exercise of its First Amendment rights.

45. SkyHop's exercise of its First Amendment rights was a substantial or motivating factor in Defendant's actions.

46. The Defendant's acts and ratification decisions were conscious and deliberate choices to follow courses of action from among various alternatives. These acts and ratification decisions were made intentionally with the knowledge that terminating SkyHop's NELA constituted retaliation for SkyHop's exercise of its rights under the law.

47. The City's actions threaten serious economic harm to SkyHop, threatening its business operations, which would chill a person of ordinary firmness from continuing to assert their rights, either through the courts or through speech, against the City.

48. The City's actions threaten to, and will, harm SkyHop's goodwill, in that it will adversely affect SkyHop's reputation for providing service to its customers—airlines—in every region nationwide that SkyHop services.  This injury to SkyHop's goodwill will have a negative ripple effect on SkyHop's operations nationwide.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff SkyHop Global LLC ("Plaintiff") prays for relief and judgment against Defendant as follows:

1. For a declaratory judgment declaring that Defendant's actions infringed upon SkyHop's First Amendment rights;

2. For equitable relief, including the continuation of the NELA through its original expiration date;

3. For injunctive relief, including preventing Defendant from further retaliating against Plaintiff;

4. For general and special damages according to proof;

5. For an award of attorneys' fees under 42 U.S.C. § 1988, California Code of Civil Procedure section 1021.5, and/or any other applicable provision of law; and

6. For costs, interest, and such other and further appropriate relief that the Court deems just and proper.

Dated: February 3, 2025                MORGAN, LEWIS & BOCKIUS LLP

By  /s/ Colin C. West
Colin C. West
Kassia Stephenson
Hailey A. Phelan
Attorneys for Plaintiff/Petitioner
SkyHop Global LLC